**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (207) 849-0320, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY 311480768771327 | No. 2:24-mj-137-KFW |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Jonathan Duquette, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application under Rule 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (207) 849-0320, with International Mobile Subscriber Identity 311480768771327, with a subscriber listed as Tracfone ("MUCYO's Phone"), whose service provider is Verizon Wireless ("VZW"), a wireless telephone service with offices at 180 Washington Valley Road, Bedminster, New Jersey. MUCYO's Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.  Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

3. I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI). I have been in this position since June 2015, and I have been a Task Force Officer in FBI's Boston Division since January 2018. I am also a Border Patrol Agent with the U.S. Border Patrol and have been in this position since December 2009. In my career, I have utilized various investigative tools and techniques, to include the use of search warrants involving cellular data.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested search warrant.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) (Distribution or Possession with Intent to Distribute Controlled Substances), 846 (Attempt and Conspiracy), and 18 U.S.C. § 924(c) have been committed, are being committed, and will be committed by Target Subject RODRIGUE MUCYO ("MUCYO"), and his associates. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7. For reference, a previous search warrant affidavit has been filed in the United States District Court, District of Maine Case No. 2:24-mj-129-KFW and is attached as Exhibit D. That warrant authorized the search of an Apple iPhone with International Mobile Equipment Identity (IMEI) 359051882873763 ("the Target Device") seized from ANTHONY BUTLER. Exhibit D incorporates Exhibit C, a previous search warrant affidavit filed in the United States District Court, District of Maine Case No. 2:24-mj-121-KFW which authorized the search of the cellular telephone with assigned call number 207-252-0586, believed to be an Apple iPhone 13 Pro Max with International Mobile Equipment Identity (IMEI) 351016092531640 ("the Target Cell Phone") that was utilized by ANTHONY BUTLER. Exhibit C incorporates Exhibit B, a previous search warrant affidavit filed in the United States District Court, District of Maine Case No. 2:24-mj-102-KFW which authorized the search two Apple iPhones and one TCL cellphone seized from JUSTIN NEVES' girlfriend's apartment in Old Orchard Beach, Maine. Exhibit B incorporates Exhibit A, a previous search warrant affidavit filed in the United States District Court, District of Maine Case No. 2:24-mj-67-KFW, which authorized the search of three Apple iPhones, two were recovered from a Honda HR-V and one from JOSHUA ESTRADA ("ESTRADA"). Exhibit A incorporates Exhibit 1, a previous search warrant affidavit filed in the United States District Court, District of Maine Case No. 2:24-mj-54-KFW, which outlines the identification of ESTRADA, YANCARLOS ABRANTE ("ABRANTE"), JASON JOHNSON-RIVERA ("JOHNSON-RIVERA"), and ANTHONY BUTLER ("BUTLER") as subjects of an investigation.

8. Target Device 2 from Exhibit A was determined to be utilized by ABRANTE (with assigned call number 508-972-3282). While reviewing Target Device 2,

3

I located a Snapchat conversation between Snapchat username, "glizzy_ftv"[1] and Snapchat username, "rodd54321"[2] which began on November 28, 2023, and continued sporadically to February 1, 2024. The conversation contained media and text messages, however, only the text messages contained content. Below are portions of ABRANTE's (glizzy_ftv) and MUCYO's (rodd54321) conversation:



---

[1] Subscriber records obtained from Snapchat on user, glizzy_ftv identified the account had one verified number 508-895-3414 which does not match ABRANTE's known telephone number. However, the account glizzy_ftv was identified in Target Device 2 as "owner" leading me to believe the account was controlled by ABRANTE.

[2] Subscriber records obtained from Snapchat on user, rodd54321 identified the account had one verified number 207-849-0320 which is the assigned call number of MUCYO's Phone.















9.      I believe that the Snapchat conversation summarized above shows that ABRANTE's drug dispute with BUTLER (as documented in paragraphs 6 – 9 of Exhibit C) also involved MUCYO. At the outset of the conversation, ABRANTE threatened MUCYO when he wrote that if MUCYO "set foot" in his neighborhood, that his "shottas" (meaning his armed criminal associates) would "extort" MUCYO (meaning rob MUCYO and not provide him with narcotics). MUCYO responded that he was just with ABRANTE's "shottas" and they "show[ed] love," meaning that they engaged in a fair

6

drug transaction. ABRANTE stated that if he gave the "green light," that his criminal associates would be "on [MUCYO's] wheels," meaning that they would hunt him down to do him harm. MUCYO stated, "do it, it's on" meaning that MUCYO was not afraid of ABRANTE's threats.

10. The Target Device from Exhibit D was determined to be utilized by BUTLER (with assigned call number 207-317-0411). While reviewing the Target Device (Exhibit D), I located a deleted text message conversation[3] between BUTLER ("0411") and MUCYO ("0320") which occurred between April 5,2024 and April 11, 2024. Below are portions of their conversation:



---

[3] Even though the text messages were deleted from the device, the conversation was recovered from the phone's memory.



11. In the above conversation there are several references to "cut" and one reference to "raw." I know "cut" to mean an additive that is mixed into a "raw" or pure drug to dilute the drug to make more sellable product (i.e. fentanyl). "Cut" can also be added to cocaine to convert the powder form of the drug into "crack." MUCYO requested "60 Gz" (likely meaning 60 grams) of "cut."

**ADDITIONAL INFORMATION REGARDING WIRELESS CARRIERS**

12. In my training and experience, I have learned that VZW is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest

to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

13. Based on my training and experience, I know that VZW can collect cellsite data about MUCYO's Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. This information can be extremely useful when attempting to locate a suspect or identify his or her past historical location. I also know that wireless providers such as VZW typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes. By analyzing the incoming and outgoing phone numbers along with the duration, date, and time of who the subject (MUCYO's Phone) is communicating with through the cellular service provider's records can assist law enforcement in identifying the other party to the call. By running those telephone numbers through normal investigative steps and searches through open-source public databases, this can lead to the identification of specific locations such as a hotel, residence, or other type of physical address. When used in conjunction with cell-site and other precision location information can lead to identifying and confirming specific addresses or areas of interest where the subject is or has been. This information is also necessary and part of the service provider's call detail records (ordinary business records) associated with

historical cell-site information and is necessary to gain a more complete understanding and more accurate view of a subject's historical and perspective location.

14. Based on my training and experience, I know that cellular providers such as VZW can also collect Timing Advance data, which is also referred to as Per Call Measurement Data ("PCMD"), the "real-time tool" ("RTT"), and True Call data. Timing Advance data estimates the approximate distance of the cellular device from a cellular tower based upon the time it takes for signals to travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

15. Based on my training and experience, I know that each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), an International Mobile Equipment Identity ("IMEI"), a Subscription Permanent Identifier ("SUPI"), and/or a Network Access Identifier ("NAI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content. Also, once the subject has been taken into custody, this identifying account information (to include email addresses and subscriber information) may also be necessary for evidentiary purposes to identify the cellular records with the subject's phone itself on a particular date and

time. Furthermore, other identifying information such as subscriber information, email addresses associated with the user of the account, all assist law enforcement identify and confirming the end user (subject) to the account maintained by the service provider. This information may also help identify if the subject discontinues service, changes devices (such as IMEI, ESN, MEID, or SUPI), or if someone else begins using this telephone number after the subject terminates the account or provides the phone to another user.

16. Based on my training and experience, I know that wireless providers such as VZW typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as VZW typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify MUCYO's Phone's user or users.

## AUTHORIZATION REQUEST

## TECHNICAL TERMS

17. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

18. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant

to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of MUCYO's Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

19.     I further request that the Court direct VZW to disclose to the government any information described in Attachment B that is within the possession, custody, or control of VZW. I also request that the Court direct VZW to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with VZW's services, including by initiating a signal to determine the location of MUCYO's Phone on VZW's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate VZW for reasonable expenses incurred in furnishing such facilities or assistance.

20. I further request that the Court authorize execution of the warrant at any time day or night, owing to the potential need to locate MUCYO's Phone outside of daytime hours.

Respectfully submitted,

Jonathan Duquette
Task Force Officer
Federal Bureau of Investigation

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: May 01 2024

City and state: Portland, Maine

Judge's signature

Karen Frink Wolf, U.S. Magistrate Judge
Printed name and title